IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KENNETH WHITE,                      )
                                    )
            Petitioner,             )
                                    )
       v.                           )    1:10CV534
                                    )
ALVIN W. KELLER, JR.,               )
                                    )
            Respondent.             )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On October 28, 2008, in the Superior Court of Orange County, Petitioner pled guilty to first-degree murder in case 07 CRS 56407. (Id. at 1.) Pursuant to the exact terms of his plea bargain, he was sentenced to life imprisonment without the possibility of parole. (Id.; Docket Entry 6, Ex. 2.) In return, the State did not seek the death penalty in the case. (Docket Entry 6, Ex. 1.)

Rather than filing a direct appeal, Petitioner filed a motion for appropriate relief, as well as an amended motion for appropriate relief, in the state trial court. (Docket Entry 1 at 2; Docket Entry 6, Exs. 3, 4.) Those motions bear various dates, but Petitioner stated in at least one state court filing that he mailed the motions on October 18, 2009. (Docket Entry 6, Ex. 6 at 2.) That assertion is consistent with the decision denying the motions, which identifies their filing date as October 21, 2009.

(Id., Ex. 5 at 1.) The motions were denied on November 6, 2009. (Id.) On April 26, 2010, Petitioner sought certiorari in the North Carolina Court of Appeals, which denied that request on May 14, 2010. (Id., Exs. 6, 8.)

Petitioner signed and dated his instant Petition as submitted to prison officials for mailing on May 24, 2010. (Docket Entry 1 at 14.) However, instead of mailing the Petition to this Court, Petitioner erroneously mailed it to the United States Court of Appeals for the Fourth Circuit, with a letter asking the Fourth Circuit to "scrutinize" his guilty plea transcript form. (Id. at 17.) The Fourth Circuit returned the Petition, along with a letter (dated June 24, 2010) informing Petitioner that the Fourth Circuit did not have jurisdiction to consider the Petition and that he must file it in a federal district court. (Id. at 19.) The Petition, although still dated as submitted for mailing on May 24, 2010, was received by this Court on July 9, 2010, in an envelope post-marked July 7, 2010. (See id. at 1, 14.)[1]

Respondent has filed both a motion to dismiss the Petition as untimely filed (Docket Entry 5) and a motion seeking summary judgment on the merits of Petitioner's claims (Docket Entry 7). Petitioner has responded to both motions in a single filing (Docket Entry 10) and the matter now comes before the Court for decision.

---

[1] The envelope does not appear on the Docket, but is located within the paper file for the case. The envelope Petitioner addressed to the Fourth Circuit is also in the paper file.

-2-

**Petitioner's Claims**

The Petition raises the following four grounds for relief:

1) "Conviction obtained by unlawfully induced guilty plea. Counsel stated plea would be an 'Alford plea.'" (Docket Entry 1, § 12, Ground One.) The Petition adds that Petitioner was not made aware of the elements of first-degree and second-degree murder, that counsel failed to prepare for trial, that counsel coerced him into pleading guilty by threatening him with the death penalty, and that there was no evidence of premeditation and deliberation to support the first-degree murder plea. (Id.)

2) "Petitioner was never told he could appeal his conviction when counsel lied about the 'Alford plea' vs. guilty plea." (Id., Ground Two.) According to the Petition, counsel told Petitioner that the pleas were the same and never told him he could appeal the "manipulated plea." (Id.)

3) "Ineffectiveness of defense counsel. No pre-trial investigation nor preparation." (Id., Ground Three.) The Petition alleges that counsel never asked Petitioner what happened or acted on statements made by family members who told counsel that Petitioner was acting strangely and talking about suicide shortly before the murder, but that counsel instead kept telling Petitioner to plead guilty or he would receive the death penalty if he went to trial. (Id.)

4) "Petitioners [sic] crime did not have the required elements needed to be convicted of first[-]degree murder." (Id., Ground Four.) In this regard, the Petition asserts that Petitioner did

not tell his attorney what happened because he could not (and still cannot) remember the murder. (Id.) Despite this lack of memory, the Petition declares that no evidence of premeditation or deliberation exists and that, had counsel conducted a proper investigation, he would have seen that the "facts" show "only a crime of passion" for which Petitioner would have demanded a trial. (Id.)

### Discussion

Respondent requests dismissal on the ground that the Petition was filed[2] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:

---

[2] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same).

> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

Here, Petitioner's judgment was entered on October 28, 2008. Ordinarily, the time to file a habeas petition would start to run at the expiration of the time for filing a direct appeal, which is fourteen days in North Carolina, see N.C.R. App. P. 4(a). However, in Petitioner's case, he pled guilty to first-degree murder, which is a Class A felony, for which the only possible penalties were

-5-

death and life imprisonment without parole. See N.C. Gen Stat. § 14-17. Petitioner received the minimum penalty of life without parole. North Carolina severely limits the right to appeal for defendants who have pled guilty. See N.C. Gen. Stat. § 15A-1444(e).

Because none of the limited grounds for direct appeal applied in Petitioner's case, he had no appeal as of right under North Carolina law. See State v. Hamby, 129 N.C. App. 366, 368-70, 499 S.E.2d 195, 196-97 (1998). As a result, Petitioner's time to file a habeas petition in this Court began to run on the day judgment was entered. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004). Petitioner's time to file then ran for 357 days until he filed his motions for appropriate relief on October 21, 2009.

The one-year federal habeas limitation period is tolled for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Therefore, as of October 21, 2009, the limitations period was stayed, but Petitioner had only eight days left to file in this Court once his state court post-conviction review concluded. The limitations period remained stayed through May 14, 2010, when the North Carolina Court of Appeals denied Petitioner's petition for certiorari seeking review of the denial of his motion for appropriate relief. At that point, the time limit began to run again and expired eight days later on

Saturday, May 22, 2010, which means that Petitioner then had until Monday, May 24, 2010, to file in this Court. His Petition was not received by the Court until July 9, 2010, in an envelope post-marked July 7, 2010. His Petition, therefore, is well out of time.

On May 24, 2010, his last day to file, Petitioner did sign and date his Petition before erroneously mailing it to the Fourth Circuit, which did not have jurisdiction over the case. Unfortunately for Petitioner, a flawed filing in federal court does not toll the limitations period. See Duncan v. Walker, 533 U.S. 167, 181-82 (2001) (filing of unexhausted federal petition did not toll statute); United States v. Kirkham, 367 Fed. Appx. 539, 543 (5th Cir. 2010) (ruling that petitioner's "failure to mail his § 2255 motion to the correct court within the one-year limitation period was, at best, a 'garden variety' claim of excusable neglect which is insufficient to justify application of the doctrine of equitable tolling"); Corjasso v. Ayers, 278 F.3d 874, 876-78 (9th Cir. 2002) (rejecting tolling for time petition was filed in wrong federal district); Sandifer v. Thaler, No. 3:09-CV-01638-K, 2010 WL 92255, at *2 n.2 (N.D. Tex. Jan. 6, 2010) (unpublished) (declining to credit time during which petitioner mailed petition to United States Court of Appeals for the Fifth Circuit in determining timeliness of petition); Bryant v. Bock, No. CV08-0614-PHX-SRB, 2009 WL 281049, at *9 (D. Ariz. Feb. 3, 2009) (unpublished) ("Petitioner's own negligence in mailing his petition to the wrong court . . . do[es] not justify equitable tolling."); Enriquez v. United States, Nos. 802CR370T30MSS, 805CV94T30MAP, 2005 WL 2127934,

at *1 & n.1 (M.D. Fla. Aug. 31, 2005) (unpublished) (denying equitable toling for period during which petitioner mailed his petition to United States Supreme Court); Hood v. Galaza, 47 F. Supp. 2d 1144, 1147 (S.D. Cal. 1999) (same as Corjasso); but see Johnson v. Franklin, No. CIV-06-0195-HE, 2006 WL 3350741, at *2 (W.D. Okla. Nov. 17, 2006) (unpublished) (permitting equitable tolling where petitioner filed federal habeas petition in state, rather than federal, court). Because Petitioner's erroneous mailing of the Petition to the Fourth Circuit on May 24, 2010, did not toll the federal habeas limitations period, his time to file expired that day and his subsequent mailing of the Petition to this Court (on or about July 7, 2010, the date of the post-mark) and the Court's receipt of the Petition (on July 9, 2010) both fall outside the statute of limitations.

Petitioner has not advanced arguments that would counter any of the foregoing calculations other than to make an unsupported statement that he filed his initial motion for appropriate relief on October 8, 2009. (See Docket Entry 10 at 2.) Even if the Court credited this assertion (which both the state court's order and Petitioner's own prior court filings contradict (Docket Entry 6, Exs. 5, 6)), the 13-day difference between October 8 and 21, 2009, would not make the Petition timely.

The Petition, however, does assert that a "fundamental miscarriage of justice" will occur if the Court finds the Petition time-barred, that Petitioner did not have counsel or access to the necessary books to raise his claim earlier, and that he "only

recently" realized that the limitations period existed. (Docket Entry 1, at 13.) These arguments appear either to request equitable tolling or an exception to the limitation period.

Petitioner's invocation of the phrase "fundamental miscarriage of justice" may represent a claim of actual innocence of the sort often used to attempt to satisfy the "miscarriage of justice" exception to a procedural default. See Schlup v. Delo, 513 U.S. 298, 315 (1995). In the context of a petition barred by the statute of limitations, a significant question exists as to the viability of an "actual innocence" exception. Compare Souter v. Jones, 395 F.3d 577, 599 (6th Cir. 2005), with Escamilla v. Jungwirth, 426 F.3d 868, 872 (7th Cir. 2005). Assuming that such an exception does apply in this context, a petitioner would have to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. That evidence must demonstrate that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Under this standard, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. Moreover, a petitioner must show factual innocence and not merely legal insufficiency. Wright v. Angelone, 151 F.3d 151, 158 n.2 (4th Cir. 1998).

If Petitioner is attempting to satisfy these standards, he has failed. He has not presented evidence, either new or old, that would show his factual innocence. Petitioner's "fundamental miscarriage of justice" argument will not excuse his failure to comply with the statute of limitations.

As for Petitioner's lack of counsel and knowledge of the law, these arguments appear to invoke the doctrine of equitable tolling, which the United States Supreme Court generally has found applicable in this context. Holland v. Florida, 560 U.S. ___, ___, 130 S.Ct. 2549, 2562 (2010). Equitable tolling may excuse an otherwise untimely filing when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Unfortunately for Petitioner, unfamiliarity with the legal process and lack of representation by counsel do not constitute grounds for equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Petitioner's assertion that he did not have access to the books he needed to prepare his Petition also falls short. Although North Carolina prisons do not have law libraries, North Carolina Prisoner Legal Services ("NCPLS") constitutes a proper alternative means of affording inmates the ability to file a petition. See Bell v. Keller, No. 5:09-HC-2167-D, 2011 WL 845913, at *4 (E.D.N.C. Mar. 8, 2011) (unpublished) ("[L]ack of access to a law library does not toll the statute of limitations where, as here, the state

makes legal assistance to inmates available through NCPLS."); Coil v. Peterkin, No. 1:07CV145, 2009 WL 3247848, at *10 (M.D.N.C. Oct. 5, 2009) (unpublished) (citing collection of cases in Wrenn v. Freeman, 894 F. Supp. 244, 248 (E.D.N.C. 1995), recognizing that NCPLS "satisfies the Constitution's requirement that inmates be given meaningful access to the courts").

Petitioner has not explained why he failed to seek assistance from NCPLS. Nor has Petitioner offered anything but a conclusory assertion that lack of access to unspecified books delayed his filing. Petitioner has not demonstrated that any "extraordinary circumstances" entitle him to equitable tolling. His Petition was filed out of time and should be dismissed.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 5) be **granted**, that Respondent's Motion for Summary Judgment (Docket Entry 7) be **denied as moot**, that the Petition (Docket Entry 1) be **dismissed**, and that Judgment be entered **dismissing this action**.

                                 /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**

September 13, 2011